# PD-0613-15

## No. 12-14-00184-CR

## IN THE TWELFTH COURT OF APPEALS
### TYLER, TEXAS

**DEMETRIUS KELLUM**

**Appellant,**

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 29 2015

Abel Acosta, Clerk

**v.**

**THE STATE OF TEXAS**

**Appellee**

On Appeal from the 114th District Court of Smith County, Texas
Trial Cause No. 114-1918-13

**ORAL ARGUMENT NOT REQUESTED**

FILED IN
COURT OF CRIMINAL APPEALS

JUN 29 2015

Abel Acosta, Clerk

Austin Reeve Jackson
Texas Bar No. 24046139
112 East Line, Suite 310
Tyler, TX 75702
Telephone: (903) 595-6070
Facsimile: (866) 387-0152

# IDENTITY OF PARTIES AND COUNSEL

## Attorney for Appellant

Appellate Counsel:

Austin Reeve Jackson
112 East Line, Suite 310
Tyler, TX 75702

Trial Counsel:

Melvin Thompson
2108 S. Wall Ave.
Tyler, TX 75701


## Attorney for the State

Mr. Michael West
Smith County ADA
100 N. Broadway
Tyler, TX 75702

No. 12-14-00184-CR

# IN THE TWELFTH COURT OF APPEALS
## TYLER, TEXAS

**DEMETRIUS KELLUM**

**Appellant,**

**v.**

**THE STATE OF TEXAS**

**Appellee**

On Appeal from the 114th District Court of Smith County, Texas
Trial Cause No. 114-1918-13

**TO THE HONORABLE JUSTICES OF THE COURT:**

COMES NOW, Demetrius Kellum, by and through his attorney of record, Austin Reeve Jackson, and files this his brief pursuant to the Texas Rules of Appellate Procedure, and would show the Court as follows:

## TEXAS COURTS OF APPEAL:

*Allen v. State,*
   249 S.W.3d 680 (Tex.App.—Austin 2008) ....................................................... 12


## STATUTES:

TEX. PEN. CODE § 9.31 ............................................................................. 4, 10

TEX. PEN. CODE § 9.32 ............................................................................. 4

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................ ii

TABLE OF CONTENTS.................................................................................... iii

INDEX OF AUTHORITIES ................................................................................ iv

STATEMENT OF THE CASE............................................................................... 2

ISSUES PRESENTED ....................................................................................... 2

STATEMENT OF FACTS .................................................................................. 2

SUMMARY OF THE ARGUMENT ...................................................................... 4

ARGUMENT................................................................................................... 4

    I.     THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPOR
           THE JURY'S REJECTION OF SELF-DEFENSE ................................... 4

           Standard of Review ......................................................................... 5

           Evidentiary Summary ...................................................................... 6

           Diane Marvels.............................................................................. 6

           Ruby Lowerie ............................................................................... 8

           Windell Williams........................................................................... 9

           Other Evidence ............................................................................. 10

           Application of Law to Facts .............................................................. 10

CONCLUSION AND PRAYER .......................................................................... 12

CERTIFICATE OF SERVICE ............................................................................ 13

CERTIFICATE OF COMPLIANCE..................................................................... 13

# INDEX OF AUTHORITIES

## UNITED STATES SUPREME COURT:

*Jackson v. Virginia,*
    443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) .................................. 5


## TEXAS COURT OF CRIMINAL APPEALS:

*Brooks v. State,*
    323 S.W.3d 893 (Tex.Crim.App. 2010) ..................................... 11

*Connor v. State,*
    67 S.W.3d 192 (Tex.Crim.App. 2001) ..................................... 6

*Gollihar v. State,*
    46 S.W.3d 243 (Tex.Crim.App. 2001) ..................................... 12

*Hooper v. State,*
    214 S.W.3d 9 (Tex.Crim.App. 2007) ..................................... 5

*Malik v. State,*
    953 S.W.2d 234 (Tex.Crim.App. 1997) ..................................... 5

*Roberts v. State,*
    273 S.W.3d 322 (Tex.Crim.App. 2008) ..................................... 12

*Sanders v. State,*
    119 S.W.3d 818 (Tex.Crim.App. 2003) ..................................... 11

*Saxton v. State,*
    804 S.W.2d 910 (Tex.Crim.App. 1991) ..................................... 5, 11

*Zulianai v. State,*
    97 S.W.3d 589 (Tex.Crim.App. 2003) ..................................... 5

## STATEMENT OF THE CASE

Demetrius Kellum appeals his conviction and sentence for the offense of aggravated assault. (I CR 88). Mr. Kellum was indicted for this offense in December in the 114th District Court of Smith County, Texas. (I CR 1). To this charge he entered a plea of "not guilty" and proceeded to trial by jury. (I CR 88). In June of 2014, a guilty verdict was returned against him and sentence imposed at confinement for life. (I CR 89). Sentence was pronounced on 5 June and notice of appeal then timely filed. (I CR 89, 95).

## ISSUE PRESENTED

### I. THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S REJECTION OF SELF-DEFENSE.

## STATEMENT OF FACTS

On a fall evening in November of 2013, Appellant, Mr. Demetrius Kellum, was at home with his girlfriend Ruby Lowerie. (IX RR 123). They were joined by Diane Marvels, a friend of Ms. Lowerie, who also brought her boyfriend Windell Williams the alleged victim in this case. (IX RR 56). Mr. Williams arrived at the gathering already having had a fair amount of alcohol and he continued to drink while at Ms. Lowerie's home. (IX RR 56, 59).

The group decided to go to a local club where Mr. Williams again continued to drink. (IX RR 60, 63). They weren't there long before Mr. Williams' intoxicated behavior drew the attention of club staff who attempted to enlist the help of Mr.

2

Kellum in calming Mr. Williams down. (IX RR 65, 132, 171). Unfortunately, Mr. Kellum was unsuccessful and Mr. Williams was forcefully removed from the club for misbehaving and "fighting with everybody." (IX RR 131, 171).

Having come in the same car the whole group left after Mr. Williams was kicked-out. (IX RR 137-38). Unfortunately, Mr. Williams continued his aggressive behavior in the car this time directing it at Mr. Kellum. (*Id.*). They had not driven far when, at a stop sign, both Mr. Kellum and Mr. Williams exited the vehicle and started fighting. (IX RR 138-39). The fight didn't last long and both men returned to the vehicle. (IX RR 80). Mr. Williams continued to act in an irate manner as they drove home and he actually attempted to continue the fight after Mr. Kellum arrived home, exited the vehicle, and went into his house. (IX RR 168). After Mr. Williams eventually calmed down, Ms. Marvels noticed the extent of the injuries he had received in the fight that included several cuts from a small knife Mr. Kellum had employed. (IX RR 83).

(1) Although Mr. Williams' initially did not want the involvement of law enforcement and reiterated at trial that the underlying situation was very much one of mutual combat, Mr. Kellum was nonetheless charged with the offense of aggravated assault based on the incident. (I CR 1). To this charge he entered a plea of "not guilty" and proceeded to trial by jury. (I CR 88). In June of 2014, a guilty verdict was returned against him and sentence imposed at confinement for life. (I CR 89).

3

Sentence was pronounced on 5 June and notice of appeal then timely filed. (I CR 89, 95).

## SUMMARY OF ARGUMENT

Where the overwhelming evidence at trial, even when viewed in the light most favorable to the State, leads to the conclusion that a defendant has acted in self defense, a guilty verdict is necessarily based on legally insufficient evidence and due process requires that an appellate court reverse the judgment of conviction and render a judgment of acquittal.

## ARGUMENT

### I. THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S REJECTION OF SELF-DEFENSE

Texas law permits a person to use force against another when it is reasonably necessary to do so to protect the person or that person's home and property. TEX. PEN. CODE § 9.31. This includes the use of deadly force when permissible. TEX. PEN. CODE § 9.32. Because the record in this case establishes that Mr. Kellum acted in accordance with his legal right to self-defense, the jury erred in rejecting his claim of self-defense and the conviction returned rests on legally insufficient evidence.

4

Standard of Review

A verdict finding a defendant to be guilty of a criminal offense carries with it an implicit finding against any defensive issues raised. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Crim.App. 2003). When a defendant challenges such a rejection of his claim of self-defense, an appellate court looks to whether, after viewing the record in the light most favorable to the prosecution, any rational trier of fact could have found against the defendant on the issue of self-defense beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App. 1991). While this review considers the quality of the evidence produced, it also defers to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007) (*citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

Such challenges are made by considering the evidence presented against a hypothetically correct jury charge. (9) *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct jury charge is one that "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 240. In making this review, a court should consider the entirety of the evidence to

determine whether any rational trier of fact could have found against the defendant on the issue of self-defense beyond a reasonable doubt. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001).

### Evidentiary Summary

In this case, there were essentially four potential witnesses to the alleged aggravated assault: Diane Marvels, Ruby Lowerie, Windell Williams, and Mr. Kellum. Importantly, all who testified gave similar testimony regarding the mutual combat nature of the incident. (IX RR 70, 74-86, 138-39: X RR 37, 44, 47).

### Diane Marvels

Ms. Marvels, the girlfriend of the alleged victim in this case, was the first of the four to testify. (IX RR 51). Ms. Marvels testified that on the date of this incident she and her friend, Ruby Lowerie, got together at Ms. Lowerie's home. (IX RR 56). Mr. Williams, the alleged victim, accompanied Ms. Lowerie and through her met Mr. Kellum. (IX RR 59).

Before arriving at Ms. Lowerie's home Mr. Williams and Ms. Marvels were drinking; as to how much, the amount varied by each witness. (IX RR 56). Once they arrived, both Ms. Marvels and Mr. Williams continued to drink. (IX RR 59). Eventually the group decided to leave the house and go to a nearby club called Banana Tree. (IX RR 60). At the club the group once again had more alcohol. (IX RR 63).

Not long after they arrived Mr. Williams' behavior got him kicked-out of the club. (IX RR 65). As a result, the whole group was forced to leave as they had come in one car. (IX RR 68). Almost immediately Mr. Williams became verbally irate with Mr. Kellum and an argument ensued. (IX RR 69). When the car stopped at a stop sign both Mr. Williams and Mr. Kellum "jumped out of the car" and began fighting. (IX RR 70). Ms. Marvels was unable to recall who exited the car first and did not see who started swinging first. (IX RR 74-76). She was able to remember though that, at least at one point, Mr. Kellum was on top of Mr. Williams. (IX RR 77-78).

Fortunately, a man who happened to be in the area was able to fairly quickly break-up the scuffle. (IX RR 79). The fighting stopped, at least for the moment, both men got back in the car and continued their verbal argument. (IX RR 80). When they arrived back at Ms. Lowerie's home though Mr. Williams pursued Mr. Kellum in an attempt to continue the argument. (IX RR 81). After exchanging words for a moment or two, Mr. Kellum went inside his house and Mr. Williams eventually returned to the car. (IX RR 82-83). It was only then that Ms. Marvels noticed the extent of Mr. Williams' injuries. (IX RR 83). Throughout it all Ms. Marvels noted that Mr. Williams was behaving as tough he had had "a little bit too much to drink," an opinion shared by the EMT who eventually examined Mr. Williams. (IX RR 46, 99). Additionally, Ms. stated noted that it was Mr. Kellum who

7

attempted to abandon the fight while Mr. Williams sought to continue it. (IX RR 109).

Ruby Lowerie

Much of Ms. Lowerie's testimony was similar to that of Ms. Marvels but Ms. Lowerie was able to add that part of what had instigated Mr. Williams' anger at Mr. Kellum was Mr. Kellum's attempts to get Mr. Williams to behave better while the group was at the club. (IX RR 131). Moreover, unlike Ms. Marvels, Ms. Lowerie had been present when Mr. Williams was removed from the club for "fighting with everybody." (IX RR 171). Again, Mr. Kellum had attempted to calm him down and get him to relax and improve his behavior. (IX RR 132).

This dynamic continued when the group got in their car to leave the club and Mr. Williams became irate with Mr. Kellum, calling him a "bitch, hoe, etc." (IX RR 136). In response, Mr. Kellum once more remained calm. (IX RR 137-38). Further, according to Ms. Lowerie, it was Mr. Williams who then first exited the car at the stop sign and then opened Mr. Kellum's door so that he could pull Mr. Kellum out of the car and physically attack him. (IX RR 138-39, 165).

Like Ms. Marvels, Ms. Lowerie reiterated that Mr. Williams was intoxicated and the only person in the group whose behavior was such that they were kicked out of the club. (IX RR 153, 159). And, once more, she noted that it was Mr. Wil-

8

liams who, when Mr. Kellum attempted to leave the group and enter his home, continued to try and instigate another physical altercation. (IX RR 168).

Windell Williams

Mr. Williams began his testimony by conceding that he had been drinking throughout the day of the incident. (X RR 26). In fact, he testified that he could not remember parts of that evening because of the amount of alcohol he had consumed. (X RR 33-34). Specifically, he did not remember any argument at the Banana Tree with Mr. Kellum, being asked to leave the club, or what the reason was that he had been removed from the club. (IX RR 34, 50). He did, however, claim to be able to remember that it was Mr. Kellum who had begun the initial argument as Mr. Kellum was upset that the group had been forced to leave the club early because of Mr. Williams. (X RR 37). According to Mr. Williams, this argument became "heated" and when the vehicle stopped at the stop sign both he and Mr. Kellum got out of the car. (X RR 37).

> I don't recall [who got out first]. I mean, you know, when someone is in an altercation and doors open, I don't know who opened those doors first. I don't know who punched – I just know we had an altercation at the stop sign. We both got out of the car and we both had an altercation, two men; I know that.

(X RR 37). Importantly, Mr. Williams was clear that the only reason he got out of the vehicle was so that he could engage in a physical altercation with Mr. Kellum:

9

... I mean, that's – that's what I got out of the car for, to fight. That's what I got out of the car for, to fight. ... That's what I got out of the car to do.

(*Id.*).

When later asked by law enforcement about the assault, Mr. Williams initially denied knowing who had assaulted him and made it clear, perhaps because of a guilty conscious, that he did not want law enforcement involved. (X RR 47, 121).

Other Evidence

In addition to the foregoing, much of which indicated that Mr. Kellum was acting in self-defense and merely "trying to push Mr. Williams off of him because Mr. Williams was really drunk" (IX RR 165), the State did present evidence that Mr. Kellum had little to no injury while Mr. Williams' injuries were extensive. (IX RR 35-39; X RR 139). This, the State argued, supported the idea that Mr. Kellum had "brought a knife to a fistfight and, even if he had initially acted in self-defense he had unjustifiably increased the level of violence in the altercation.

Application of Law To Facts

Recognizing as fundamental the right to protect one's person, the Texas Legislature has codified the right to self-defense against an aggressor's use of force so long as the actor did not provoke the initial conduct and was not himself otherwise engaged in criminal activity. TEX. PEN. CODE § 9.31(a)(2),(3). This description exactly fits Mr. Kellum's position at the time of the underlying altercation.

10

The record is clear that Mr. Williams, who was intoxicated, had bee aggressive with staff in the Banana Tree and had directed some of his anger at being removed from the club toward Mr. Kellum who had been attempting to be a calming influence on Mr. Williams. (IX RR 131-32, 171). Moreover, at worst, the evidence showed that the decision to engage in an altercation was one that was simultaneous between Mr. Kellum and Mr. Williams. (X RR 37). That Mr. Williams was the primary aggressor though is the only reasonable deduction from the fact that all parties testified that it was Mr. Williams who repeatedly attempted to continue the altercation and who pursued Mr. Kellum even after Mr. Kellum entered his own home. (IX RR 81, 168).

Thus, even in the light most favorable to the verdict, the evidence is legally insufficient to support the conclusion that Mr. ~~Smith~~ (Kellum) acted in any way other than in self-defense. *See Sanders v. State*, 119 S.W.3d 818, 820 (Tex.Crim.App. 2003) (standard of review); *but see Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010) (an appellate court will not reweigh evidence but will defer to the jury's resolution of conflicts in the same); *Saxton v. State*, 804 S.W.2d 910, 912 (Tex.Crim.App. 1991) ("[F]or an appellate court to find as a matter of law that the defendant acted in self-defense, the evidence must be uncontradicted and no issue thereon presented for the [factfinder's] determination.").

The court of Criminal Appeals has held that, "Due process requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the offense alleged." *Roberts v. State*, 273 S.W.3d 322, 329 (Tex.Crim.App. 2008). The role of an appellate court is to safeguard this due process right. *Allen v. State*, 249 S.W.3d 680, 704 (Tex.App.—Austin 2008, no pet.) (*citing Gollihar v. State*, 46 S.W.3d 243, 245-46 (Tex.Crim.App. 2001)). Acting in this capacity, because the record before the Court fails to establish a basis from which the jury should have reasonably rejected Mr. Kellum's claim of self-defense, the Court should reverse the judgment before it and render a judgment of acquittal.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, counsel prays that the Court, because the evidence is legally insufficient to support the jury's implied finding against Mr. Kellum regarding self defense, that the Court reverse the underlying judgment and render a judgment of acquittal.

Respectfully submitted,

/s/ Austin Reeve Jackson
Texas Bar No. 24046139
112 East Line, Suite 310
Tyler, TX 75702
Telephone: (903) 595-6070
Facsimile: (866) 387-0152

12

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this brief was delivered to counsel for the State by facsimile on this the 24th day of November 2014.

/s/ Austin Reeve Jackson

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the requirements of Rule 9.4 and consists of 2,748 words.

/s/ Austin Reeve Jackson

[Legal Insufficiency means] That the state's case was so lacking that <u>it should not have ever been submitted to the jury.</u> Insufficiency means that the state's case could be "<u>cured or satisfied only</u>" by the "<u>introduction of new evidence</u>" to prove, if possible, their theory of the case)

13